Type: EASEMENT
Kind: DEE
Recorded: 11/24/2021 at 11:25:41 AM
Fee Amt: $186.00 Page 1 of 21
Montgomery County, OH
Brandon C. McClain Recorder
File# 2021-00089448

NO TRANSFER
15:25:23   11/16/2021
Reg DT01   Receipt       Cashier RO
      Montgomery County Auditor
          Karl L. Keith

2\

# GRANT OF EASEMENT

| | |
|---|---|
| Facilities: | 875882 |
| Street Address: | 1042 Patterson road NA |
| City: | Dayton |
| County: | Montgomery |
| State: | Ohio |

between

**GLOBAL SIGNAL ACQUISITONS IV LLC,**
**a Delaware limited liability company ("GSA IV")**

and

**MILA INVESTMENTS, LTD.,**
**an Ohio limited liability company, successor Trustee of the Breitenstrater Trust**
**("Grantor")**



Site Name: Dayton Southeast
BUN #875882
11821261.10
13013923.1

**EXHIBIT 1**

Mo. Tower Title
18 Imperial Pl
Providence, RI 02903

# GRANT OF EASEMENT

THIS GRANT OF EASEMENT (the "**Easement**") is made effective this 27TH day of OCTOBER, 2021 ("**Effective Date**"), by and between MILA INVESTMENTS, LTD., an Ohio limited liability company, successor Trustee of the Breitenstrater Trust ("**Grantor**") and GLOBAL SIGNAL ACQUISITONS IV LLC, a Delaware limited liability company ("**GSA IV**").

1.  **Description of Grantor's Property**. Grantor is the owner of that certain land and premises in the City of Dayton, County of Montgomery, State of Ohio, by grant or conveyance described in the deed dated April 20, 2005 and recorded April 21, 2005 in the Public Records of Montgomery County, Ohio as Instrument No. 2005-00036939, the description of said property is attached hereto as **Exhibit A** (hereinafter "**Grantor's Property**").

2.  **Description of Easement**. For good and valuable consideration to be paid in connection with this Easement, the receipt and sufficiency of which the parties hereby acknowledge, Grantor grants and conveys unto GSA IV, its successors and assigns, an exclusive, term easement for one hundred (100) years for the use of a portion of Grantor's Property, that portion being described as a three hundred (300) square foot parcel within Grantor's Property (the "**Easement Area**"), as such Easement Area is more particularly shown in the site plan attached hereto as **Exhibit B** and described by metes and bounds in **Exhibit C** attached hereto. The Grantor also grants to GSA IV, its successors and assigns, as part of this Easement, an exclusive, 100 year right-of-way for ingress and egress, seven (7) days per week, twenty-four (24) hours per day, on foot or motor vehicle, including trucks, along a right-of-way extending from the nearest public right-of-way, together with the right to install, replace and maintain utility wires, poles, cables, conduits and pipes (the "**Access Easement**"), as is more particularly shown in the site plan attached hereto as **Exhibit B** and described by metes and bounds in **Exhibit C** (hereinafter the term "**Easement Area**" shall be deemed to also include the Access

Easement unless stated to the contrary). In the event GSA IV or any public utility is unable or unwilling to use the above-described Access Easement, Grantor hereby agrees to grant an additional right-of-way, in form satisfactory to GSA IV, to GSA IV or at GSA IV's request, directly to a public utility, at no cost and in a location acceptable to GSA IV (the "**Additional Access Easement**"). For any such Additional Access Easement to be effective, such easement shall be recorded among the Public Records of Montgomery County, State of Ohio. Also, Grantor hereby grants to GSA IV, its successors and assigns a non-exclusive construction and maintenance easement over any portion of Grantor's Property that is reasonably necessary, in GSA IV's discretion, for any construction, repair, maintenance, replacement, demolition and removal related to the Permitted Use (defined below), and GSA IV shall restore such portion of Grantor's Property to its original condition after its use of the construction and maintenance easement.

3.  **Easement Area**. The Easement Area shall be used for (a) constructing, maintaining and operating communications facilities, including without limitation, tower structures, antenna support structures, cabinets, meter boards, buildings, antennas, cables, equipment and (b) uses incidental thereto, including without limitation, testing of any kind, for GSA IV's use and the use of its lessees, licensees, invitees, and/or sub-easement holders (the "**Permitted Use**"). It is the intent of the parties that GSA IV's communications facilities shall not constitute a fixture. Grantor acknowledges that Grantor has no right to object to or approve any improvements to be constructed by GSA IV on the Easement Area so long as such improvements are constructed in accordance with all applicable rules, laws, statutes and ordinances and do not unreasonably interfere with the business operations of the Grantor and the Grantor's tenants, provided that operations consistent with the Permitted Use shall not be deemed to interfere with Grantor or Grantor's tenants. If requested by GSA IV, Grantor will execute, at GSA IV's sole cost and expense, all documents required by any governmental authority in connection with any development of, or construction on, the Easement Area, including documents

Page 1

necessary to petition the appropriate public bodies for certificates, permits, licenses and other approvals deemed necessary by GSA IV in GSA IV's absolute discretion to utilize the Easement Area for the Permitted Use. Grantor agrees to be named applicant if requested by GSA IV. In furtherance of the foregoing, Grantor hereby appoints GSA IV as Grantor's attorney-in-fact to execute all land use applications, permits, licenses and other approvals on Grantor's behalf. Grantor shall be entitled to no further consideration with respect to any of the foregoing matters. Grantor shall take no action that would adversely affect the status of the Easement Area with respect to the Permitted Use.

**4.** **Term Easement**. This Easement and GSA IV's rights and privileges hereunder shall be for a term of one hundred (100) years commencing upon the Effective Date and terminating on the one hundredth (100th) anniversary thereof, unless Crown earlier terminates this Easement as provided for herein.

**5.** **GSA IV's Right to Terminate**. GSA IV shall have the unilateral right to terminate this Easement for any reason. Said termination shall be effective upon GSA IV providing written notice of termination to Grantor. Upon termination of this Easement, this Easement shall become null and void and all of the parties shall have no further obligations to each other. Upon termination of this Easement, GSA IV shall, within a reasonable time, remove its building(s), tower and above ground property and restore the surface of the Easement Area to its original condition, reasonable wear and tear excepted. If GSA IV exercises its right to terminate this Easement, Grantor shall retain the entirety of the purchase price upon such termination. In the event that GSA IV does not restore the property within a reasonable time as provided for herein, then Grantor shall have the right to conduct such restoration and GSA IV shall reimburse Grantor for any reasonable costs incurred as a result.

**6.** **Hazardous Materials**.

(a)    GSA IV shall not intentionally cause or permit the use, storage, generation, escape, disposal or release

of any Hazardous Materials (defined below) in any manner not sanctioned by law. In all events, GSA IV shall indemnify and hold Grantor harmless from any and all claims, damages, fines, judgments, penalties, costs, liabilities or losses (including, without limitation, any and all sums paid for settlement of claims, attorneys' fees, and consultants' and experts' fees) from the presence or release of any Hazardous Materials on the Easement Area if caused by GSA IV or persons acting under GSA IV. GSA IV shall execute such affidavits, representations and the like from time to time as Grantor may reasonably request concerning GSA IV's best knowledge and belief as to the presence of Hazardous Materials within the Easement Area.

(b)    Grantor shall not intentionally cause or permit the use, storage, generation, escape, disposal or release of any Hazardous Materials in any manner not sanctioned by law. In all events, Grantor shall indemnify and hold GSA IV harmless from any and all claims, damages, fines, judgments, penalties, costs, liabilities or losses (including, without limitation, any and all sums paid for settlement of claims, attorneys' fees, and consultants' and experts' fees) from the presence or release of any Hazardous Materials on Grantor's Property unless caused by GSA IV or persons acting under GSA IV. Grantor shall execute such affidavits, representations and the like from time to time as GSA IV may reasonably request concerning Grantor's best knowledge and belief as to the presence of Hazardous Materials on Grantor's Property. Grantor shall execute such affidavits, representations and the like from time to time as GSA IV may reasonably request concerning Grantor's best knowledge and belief as to the presence of Hazardous Materials within one hundred (100) feet of the Easement Area on Grantor's Property.

(c)    For purposes of this Easement, the term **"Hazardous Materials"** means any substance which is (i) designated, defined, classified or regulated as a hazardous substance, hazardous material, hazardous waste, pollutant or contaminant under any Environmental Law (defined below), as currently in effect or as hereafter amended or enacted, (ii) a petroleum hydrocarbon, including crude oil or any fraction thereof and all petroleum products, (iii) PCBs,

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1



(iv) lead, (v) asbestos, (vi) flammable explosives, (vii) infectious materials, or (viii) radioactive materials. **"Environmental Law(s)"** means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Sections 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Sections 6901, et seq., the Toxic Substances Control Act, 15 U.S.C. Sections 2601, et seq., the Hazardous Materials Transportation Act, 49 U.S.C. 5101, et seq., and the Clean Water Act, 33 U.S.C. Sections 1251, et seq., as said laws have been supplemented or amended to date, the regulations promulgated pursuant to said laws and any other federal, state or local law, statute, rule, regulation or ordinance which regulates or proscribes the use, storage, disposal, presence, clean-up, transportation or release or threatened release into the environment of Hazardous Materials.

7.      **Insurance**.  At all times, GSA IV, at its sole expense, shall obtain and keep in force insurance which may be required by any federal, state or local statute or ordinance of any governmental body having jurisdiction in connection with the operation of GSA IV's business upon the Easement Area.  Said insurance shall include Commercial General Liability coverage in an amount not less than One Million and No/100 Dollars ($1,000,000.00) per occurrence and Two Million and No/100 Dollars (2,000,000) in the aggregate and shall name Grantor as an additional insured on the policy.  The required limits recited herein may be met by primary and excess or umbrella policies.  Upon request, GSA IV shall provide Grantor with a copy of the certificate of insurance evidencing this insurance coverage.

8.      **Security of GSA IV's Communications Facilities**.  GSA IV may construct a chain link or comparable fence around the perimeter of GSA IV's communications facilities, so long as such fence conforms with all applicable governmental rules, regulations, and ordinances and does not otherwise unreasonably interfere with Grantor's or Grantor's tenants' use of the common area of Grantor's Property.

9.      **Removal of Obstructions**.  GSA IV has the right to remove obstructions, including but not limited to vegetation, which may encroach upon, interfere with or present a hazard to GSA IV's use of the Easement Area, providing that such removal does not unreasonably interfere with the current business operations of the Grantor or the Grantor's tenants as of the Effective Date.  GSA IV shall be responsible for disposing of any materials related to the removal of obstructions.

10.      **Right of First Refusal**.  Intentionally deleted.

11.      **Option for Additional Easement**.  GSA IV shall have the irrevocable right and option (the **"Option"**), exercisable at any time, and from time to time, following the execution of the Easement, to amend the Easement for no additional consideration except as provided herein, to include up to a maximum of five hundred (500) square feet of real property adjacent to the exterior space of the Easement Area in a location as more specifically described on the Survey (the **"Additional Easement Area"**).  GSA IV may conduct any reasonable due diligence activities on the Additional Easement Area at any time after full execution of the Easement.  If GSA IV elects to exercise the Option, GSA IV shall pay a purchase price per square foot for the Additional Easement equal to the purchase price per square foot that GSA IV paid to Grantor for the Easement Area pursuant to the Easement.  GSA IV may exercise the Option for the entire Additional Easement Area in a single exercise, or may exercise the Option multiple times in increments, by providing written notice to Grantor at any time; provided, however, that following GSA IV's delivery of notice to Grantor, GSA IV may at any time prior to full execution of the Additional Easement Area Documents (as defined herein) withdraw its election to exercise the Option if GSA IV discovers or obtains any information of any nature regarding the Additional Easement Area which GSA IV determines to be unfavorable in its sole discretion.  Within thirty (30) days after GSA IV's exercise of the Option, and contemporaneously with GSA IV's payment of the Option purchase price, Grantor agrees to execute and deliver an amendment to the Easement, a memorandum of amendment (each of which may include a metes and bounds description of the Additional Easement Area), and any other documents

Page 3

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

necessary to grant and record GSA IV's interest in the Additional Easement Area ("**Additional Easement Area Documents**"). In addition, within thirty (30) days after GSA IV's exercise of the Option, Grantor shall obtain and deliver any documentation necessary to remove, subordinate or satisfy any mortgages, deeds of trust, liens or encumbrances affecting the Additional Easement Area to GSA IV's satisfaction.

**12.** **Building Located Within Easement Area.** With regard to the portion of Grantor's building that is located within the Easement Area, the parties agree that the costs for any repairs made necessary to that portion of Grantor's building contained within the Easement Area shall be the responsibility of GSA IV, provided that in the event that Grantor conducts repairs to the building outside of the Easement Area, GSA IV shall only be responsible for that part of such repair costs that relate directly to the Easement Area.

**13.** **Real Estate Taxes.** Grantor shall pay all real estate taxes on Grantor's Property; provided GSA IV agrees to reimburse Grantor for its prorated share of the real estate taxes levied against Grantor's Property in an amount equal to the product of the total real estate taxes assessed against Grantor's Property multiplied a fraction, the numerator of which is the square footage of the Easement Area at the time of the assessment, and the denominator of which is the total square footage of Grantor's Property. In the event that Grantor fails to pay all real estate taxes on Grantor's Property prior to such taxes becoming delinquent, GSA IV may, at its option, pay such real estate taxes (the "**Delinquent Taxes**") and GSA IV shall have the right to collect the Delinquent Taxes from Grantor together with interest on the Delinquent Taxes at the rate of twelve percent (12%) per annum (calculated from the date GSA IV pays the Delinquent Taxes until Grantor repays such sums due to GSA IV) and shall have a lien against Grantor's Property with respect thereto.

**14.** **Waiver of Subrogation.** The parties hereby waive any and all rights of action for negligence against the other which may hereafter arise on account of damage to the Easement Area or any other portion of Grantor's Property, including improvements and personal property located thereon,

resulting from any fire or other casualty of the kind covered by property insurance policies with extended coverage regardless of whether or not, or in what amount, such insurance is now or hereafter carried by the parties.

**15.** **Enforcement.** In the event Grantor fails to cure any violation of the terms of this Easement within thirty (30) days after written notice from GSA IV, GSA IV shall have the right to injunctive relief, to require specific performance of this Easement, to collect damages from Grantor, and to take such actions as may be necessary in GSA IV's discretion to cure such violation and charge Grantor with reasonable costs and expenses incurred by GSA IV as a result of such violation (including without limitation, GSA IV's reasonable attorneys' fees). All rights and remedies provided under this Easement are cumulative and may be pursued singularly, in any combination, and in any order. The failure to enforce any of the terms and provisions contained herein shall in no event be deemed to be a waiver of the right to thereafter strictly enforce the terms and provisions hereof.

**16.** **Limitation on Damages.** In no event shall either party be liable to the other party for consequential, indirect, speculative or punitive damages in connection with or arising from this Easement, the Permitted Use or the Easement Area.

**17.** **Recording.** Grantor acknowledges that GSA IV intends to record this Easement with the appropriate recording officer upon execution of this Easement.

**18.** **Hold Harmless.** Grantor hereby indemnifies, holds harmless, and agrees to defend GSA IV against all damages asserted against or incurred by GSA IV by reason of, or resulting from: (a) the breach by Grantor of, any representation, warranty, or covenant of Grantor contained herein or (b) any negligent act or omission of Grantor, excepting however such damages as may be due to or caused by the acts of GSA IV or its agents. GSA IV hereby indemnifies, holds harmless, and agrees to defend Grantor against all damages asserted against or incurred by Grantor by reason of, or resulting from: (a) the breach by GSA IV of any representation, warranty,

Page 4

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1



or covenant of GSA IV contained herein; (b) the violation by GSA IV of any zoning laws, regulations, ordinances, or statutes; or (c) any negligent act or omission of GSA IV, excepting however such damages as may be due to or caused by the acts of Grantor or its agents.

**19.    Casualty.** If at any time during the term of this Easement all or substantially all of the improvements are damaged and/or destroyed by fire or other casualty ("**Casualty**"), then GSA IV may elect to either terminate this Easement or to continue the Easement for the remaining term and rebuild its improvements in the Easement Area at no cost or expense to Grantor. In the event of a Casualty, Grantor shall have no obligation to rebuild the building owned by Grantor. If a Casualty occurs and GSA IV elects to continue this Easement and rebuild the improvements, GSA IV agrees to consider rebuilding the improvements in an alternative location on Grantor's Property if requested to do so by Grantor provided that (a) such location is suitable for the purposes of this Easement; (b) GSA IV approves of the location in its absolute and sole discretion, and (c) Grantor agrees to convey an easement at no cost to GSA IV containing the same terms and conditions, and for the balance of the remaining term, of this Easement. If the foregoing conditions are not satisfied, then GSA IV shall be entitled to rebuild its improvement in the Easement Area and this Easement shall remain in full force and effect. Should a Casualty occur both Grantor and GSA IV shall be entitled to collect and keep all insurance proceeds payable from each its respective insurers.

**20.    Grantor's Covenant of Title.** Grantor covenants: (a) Grantor is seized of fee simple title to the Grantor's Property of which the Easement Area is a part and has the right and authority to grant this Easement; (b) that this Easement is and shall be free and clear of all liens, claims, encumbrances and rights of third parties of any kind whatsoever, except for the Lease Agreements (as defined below) assigned to GSA IV; (c) subject to the terms and conditions of this Easement, GSA IV shall have quiet possession, use and enjoyment of the Easement Area; (d) there are no aspects of title that might interfere with or be adverse to GSA IV's interests in and intended use of the

Easement Area; and (e) that Grantor shall execute such further assurances thereof as may be required.

**21.    Non-Interference.** From and after the date hereof and continuing until this Easement is terminated (if ever), GSA IV and its lessees, licensees and/or sub-easement holders shall have the exclusive right to construct, install and operate communications facilities that emit radio frequencies on Grantor's Property.    Grantor shall not permit (a) the construction, installation or operation of any communications facilities that emit radio frequencies on Grantor's Property other than communications facilities constructed, installed and/or operated on the Easement Area pursuant to this Easement or the Lease Agreements or (b) any condition on Grantor's Property which interferes with GSA IV's Permitted Use. Each of the covenants made by Grantor in this Section is a covenant running with the land for the benefit of the Easement Area and shall be binding upon Grantor and each successive owner of any portion of Grantor's Property and upon each person having any interest therein derived through any owner thereof.

**22.    Lease Agreements.** The parties hereby acknowledge (a) that certain PCS Site Agreement dated January 20, 1998 by and between Grantor, as lessor, and Sprintcom, Inc., a Kansas corporation, as lessee, with a Memorandum of PCS Site Agreement dated January 20, 1998 and recorded on July 28, 1998 as Document Number 066550 in the Office of the Recorder of the County of Montgomery, State of Ohio, with an Addendum to PCS Site Agreement dated May 15, 1998, an Amendment to PCS Site Agreement dated September 4, 2001, with an Assignment Agreement and memorialized by An Affidavit of Facts Relating To Title, dated October 6, 2005, recorded in the Public Records of Montgomery County, Ohio on October 26, 2005, as Instrument No. 2005-00109760, a Second Amendment to PCS Site Agreement dated August 20, 2008 with a Memorandum of Agreement of even date recorded in the Public Records of Montgomery County, Ohio on April 21, 2009, as Instrument No. AGRE-09-026273 (as amended or assigned, collectively the "**Leased Agreement 1**") and (b) that certain Building and Rooftop Lease Agreement dated May 1, 2005 between Grantor, as

Page 5

lessor, and New Par, a Delaware partnership d/b/a Verizon Wireless, as original lessee ("New Par"), for which a Memorandum of Lease was recorded in the Public Records of Montgomery County, Ohio on December 15, 2005 as Instrument No. 05-128089, whereby Grantor leased to New Par a certain site located on Patterson Road, City of Dayton, County of Montgomery, State of Ohio (as amended or assigned, collectively the "**Leased Agreement 2**") (Lease Agreement 1 and Lease Agreement 2 shall collectively be referred to herein as the "**Lease Agreements**"). Grantor hereby assigns to GSA IV all of Grantor's right, title and interest in the Lease Agreements, pursuant to a separate Assignment of Lease Agreement of even date herewith. If applicable, at the closing of the Transaction (as defined hereinafter), the purchase price shall be reduced by an amount equal to the portion of any rent or other payments previously paid to Grantor pursuant to the Lease Agreements for any period of time after the closing of the Transaction. The defined term "**Transaction**" shall include the assignment of Grantor's interest in the Lease Agreements pursuant to the Assignment of Leases as set forth in this section. If at any time following the closing date, the amount of any such adjustment proves to be incorrect (whether as a result of an error in calculation or a lack of complete and accurate information as of the date of the closing), then the party in whose favor the error was made shall promptly pay to the other party the sum necessary to correct such error in payment upon receipt of proof of such error, provided that such proof is delivered to the party from whom payment is requested on or before six (6) months after the closing date. The provisions of this section shall survive the closing and shall not be merged therein.

23.  **Eminent Domain**. If the whole or any part of the Easement Area shall be taken by right of eminent domain or any similar authority of law, the entire award for the value of the Easement Area and improvements so taken shall belong to GSA IV.

24.  **Grantor's Property**. Grantor shall not do or permit anything that will interfere with or negate any special use permit or approval pertaining to the Easement Area or cause any communications facilities on the Easement Area to be in nonconformance with applicable local, state, or federal laws. Grantor covenants and agrees that it shall not subdivide the Grantor's Property if any such subdivision will adversely affect the Easement Area's compliance (including any improvements located thereon) with applicable laws, rules, ordinances and/or zoning, or otherwise adversely affects GSA IV's ability to utilize Grantor's Property for its intended purposes. Grantor shall not initiate or consent to any change in the zoning of Grantor's Property or any property of Grantor contiguous to, surrounding, or in the vicinity of Grantor's Property, or impose or consent to any other restriction that would prevent or limit GSA IV from using the Easement Area for the uses intended by GSA IV.

25.  **Entire Agreement**. Grantor and GSA IV agree that this Easement contains all of the agreements, promises and understandings between Grantor and GSA IV. No verbal or oral agreements, promises or understandings shall be binding upon either Grantor or GSA IV in any dispute, controversy or proceeding at law. Any addition, variation or modification to this Easement shall be void and ineffective unless made in writing and signed by the parties hereto.

26.  **Construction of Document**. Grantor and GSA IV acknowledge that this document shall not be construed in favor of or against the drafter and that this document shall not be construed as an offer until such time as it is executed by one of the parties and then tendered to the other party.

27.  **Applicable Law**. This Easement and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the State where the Easement is located. The parties agree that the venue for any litigation regarding this Easement shall be Montgomery County, State of Ohio.

28.  **Notices**. All notices hereunder shall be in writing and shall be given by (a) established express delivery service which maintains delivery records, (b) hand delivery, or (c) certified or registered mail, postage prepaid, return receipt requested. Notices may also be given by facsimile transmission, provided that the notice is concurrently given by one of the above

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

methods. Notices are effective upon receipt, or upon attempted delivery if delivery is refused or if delivery is impossible because of failure to provide reasonable means for accomplishing delivery. The notices shall be sent to the parties at the following addresses:

Grantor:

Mila Investments, Ltd., Trustee
The Breitenstrater Trust
P. O. Box 340370
Dayton, OH 45434-0370 B004

GSA IV:

Global Signal Acquisitions IV LLC
c/o Crown Castle USA Inc.
Attn: Legal – Real Estate Dept.
BU #875882
2000 Corporate Drive
Canonsburg, PA 15317

**29.** **Assignment**. The parties hereto expressly intend that the easements granted herein shall be easements in gross, and as such, are transferable, assignable, inheritable, divisible and apportionable. GSA IV has the right, within its sole discretion, to sell, assign, lease, convey, license or encumber any of its interest in the Easement Area without consent. In addition, GSA IV has the right, within its sole discretion, to grant sub-easements over any portion of the Easement Area without consent. Any such assignment, lease, license, conveyance, sub-easement or encumbrance shall be binding upon the successors, assigns, heirs and legal representatives of the respective parties hereto. An assignment of this Easement shall be effective upon GSA IV sending written notice thereof to Grantor at Grantor's mailing address stated above and shall relieve GSA IV from any further liability or obligation accruing hereunder on or after the date of the assignment.

**30.** **Partial Invalidity**. If any term of this Easement is found to be void or invalid, then such invalidity shall not affect the remaining terms of this Easement, which shall continue in full force and effect.

**31.** **Mortgages**. This Easement shall be subordinate to any mortgage, deed of trust, pledge or other security interest in the Property given by Grantor (each a **"Mortgage"**) which, from time to time, may encumber all or a portion of Grantor's Property, including the Easement Area; provided, however, that the holder of any such Mortgage shall recognize (a) the validity of this Easement in the event of foreclosure of any interest(s) in Grantor's Property and (b) GSA IV's right to occupy the Property, including any rights of access and/or utilities related thereto. Simultaneously with the execution of this Easement, Grantor, at its sole cost and expense, shall obtain and furnish to GSA IV a non-disturbance agreement, in recordable form, reasonably acceptable to GSA IV for any pre-existing Mortgage(s) which may encumber all or a portion of Grantor's Property, including the Easement Area. Following the full execution of this Easement and prior to the recordation of this Easement, Grantor, at its sole cost and expense, shall obtain and furnish to GSA IV a non-disturbance agreement, in recordable form, reasonably acceptable to GSA IV for any subsequent Mortgage(s) that may encumber all or a portion of the Grantor's Property, including the Easement Area.

**32.** **Successors and Assigns**. The terms of this Easement shall constitute a covenant running with the Grantor's Property for the benefit of GSA IV and its successors and assigns and shall extend to and bind the heirs, personal representatives, successors and assigns of the parties hereto and upon each person having any interest therein derived through any owner thereof. Any sale, mortgage, lease or other conveyance of Grantor's Property shall be under and subject to this Easement and GSA IV's rights hereunder.

**33.** **Construction of Easement**. The captions preceding the sections of this Easement are intended only for convenience of reference and in no way define, limit or describe the scope of this Easement or the intent of any provision hereof. Whenever the singular is used, the same shall include the plural and vice versa and words of any gender shall include the other gender. As used herein, "including" shall mean "including, without limitation." This document may be executed in multiple counterparts,

Page 7

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1



each of which shall be deemed a fully executed original.

END OF DOCUMENT – SIGNATURES FOLLOW

Site Name:  Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

[Signature Page 1 of 2 to Grant of Easement]

**IN WITNESS WHEREOF,** Grantor and GSA IV, having read the foregoing and intending to be legally bound hereby, have executed this Grant of Easement as of the day and year first written above.

**GRANTOR:**

MILA Investments, Ltd.,
an Ohio limited liability company,
successor trustee of the Breitenstrater Trust

Signature: _Robert Lachey_
Name: _ROBERT LACHEY_
Title: _MANAGER_

## ACKNOWLEDGEMENT

STATE OF __OHIO_____ )
                                                              ) SS:
COUNTY OF __MONTGOMERY_____ )

This is an acknowledgment; no oath or affirmation was administered to the signatory. The foregoing instrument was acknowledged before me this __14th__ day of __October__, 2021, by __Robert Lachey__, the __Manager__ of MILA Investments, Ltd., an Ohio limited liability company, successor trustee of the Breitenstrater Trust, on behalf of the limited liability company.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

(SEAL)

_Cynthia J Walling_
Title (and Rank): _____
Printed Name: _____
My Commission Expires: _____
Serial Number, if any: _____

**CYNTHIA J WALLING, Notary Public**
**In and for the State of Ohio**
**My Commission Expires Sept 1, 2023**

Page 8

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

[Signature Page 2 of 2 to Grant of Easement]

**GSA IV:**

Global Signal Acquisitions IV, LLC,
a Delaware limited liability company

Signature: _____
Name: Tara Groda
Title: Manager National RE Ops

ACKNOWLEDGEMENT

STATE OF Texas )
) SS:
COUNTY OF Harris )

This is an acknowledgment; no oath or affirmation was administered to the signatory. The foregoing instrument was acknowledged before me this 27 day of Oct , 2020, by Tara Groda , the Manket RE of Global Signal Acquisitions IV LLC, a Delaware limited liability company, on behalf of the limited liability company.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Title (and Rank): _____
(SEAL)
Printed Name: Veronica N Lawrence
My Commission Expires: _____
Serial Number, if any: _____

Instrument Prepared By:
Christopher R. Mykytiak, Esq.
Hahn Loeser & Parks, LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
216-274-2242



VERONICA N LAWRENCE
Notary ID #131103553
My Commission Expires
April 26, 2025

After recording return to:
Crown Castle
8020 Katy Fwy
Houston, TX 77024

Page 11

Site Name: Dayton Southeast
BUN #: 875882
11821261.10

**EXHIBIT A**

**GRANTOR'S PROPERTY**

**SEE ATTACHED**

Site Name:  Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

The land referred to herein below is situated in the County of Montgomery, City of Dayton, State of Ohio and is described as follows:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being part of Lot 61371 of the consecutive numbers of lots on the revised plat of the said city of Dayton, Ohio being more particularly described as follows:

Beginning on the West line of white oak drive (now a 50 foot street by deed book 1435, page 205 of the Montgomery county drive (now a 50 of foot street ex deed, book 1435, page 205 of the Montgomery county deed records) at a point 60.11 feet South of the centerline of Patterson road; thence South 1 deg. 11' West with the West line of White Oak drive for a distance of 96.43 feet to the Northeast corner of a 0.766 acre tract as described, in deed book 1435, page 211 of the Montgomery county deed records; thence North 89 deg. 01' 02" West with the North line of the 0.766 acre tract for a distance of 130.00 feet thence south 1 deg. 11' West with the West line of the said 0.766 acre tract for a distance of 260.00 feet to the Northwest corner of a 0.216 acre tract as described indeed book 1435, page 207 of the Montgomery county deed records; thence South 1 deg. 11' West with the West line of the said 0.216 acre tract for a distance of 72.50 feet to the Northwest corner 0.388 acre tract as described in deed book 1435, page 209 of the Montgomery, county deed records; thence south 1 deg. 11' West with the West line of the said 0.388 acre tract for a distance of .130.00 feet to the South line of said lot 61371; thence North 89 deg. 01' West with the South line of said lot 61371 for a distance of 383.69 feet to the East line of

Parcel "B" acquired by the city of Dayton for the Widening of Wilmington pike; thence North 33 deg. 59' West with the East line of said parcel 8 parallel and 45.00 feet measured at right angles Northeastwardly from the State of Ohio centerline for a distance of 646.69 feet to a point a on a curve, said point a being South 33 deg. 59' East a distance of .41.98 feet from a point B which is 45.00 feet measured at right angles South of the centerline of Patterson road; thence on a curve to the right, the tangent at the start is North 19 deg. 08' 54" West, having a radius of 90.00 feet for an arc length of 11.44 feet to a point of compound curvature; thence on a curve to the right having a radius of 20.00 feet for an arc length of 28.10 feet to a point of compound curvature; thence on a curve to the right having a radius of 90.00 feet for an arc length of 1.69 feet to a point c, the tangent of the last described curve at said point c being North 65 deg. 42' 36" East, said point c being South 89 Deg. 15' East a distance of 34.28 feet from said point b; thence South 89 deg. 15' East parallel and 45.00 feet, measured at right angles, South of the centerline of Patterson road for a distance of 860.95 feet to a point 15.11 feet Westwardly from the intersection of the West line of white oak drive and the South line of Patterson road, said point being a point of curvature; thence on a curve to the right having a radius of 15.00 feet for an arc length of 23.68 feet to the place of beginning.

Excepting therefrom the following described real estate:

Located in the City of Dayton, County of Montgomery, State of Ohio and being part of Lot 61371 of the revised and consecutive numbers of lots on the plat of said City of Dayton, Ohio and being Montgomery, described as follows.

Beginning at the intersection of the Westward extension of the South right of way line of Patterson road with the Northward extension of the East right of way line of Wilmington pike, said point being forty fie and 00/100 (4500) feet South of the centerline of said Patterson road and forty five and 00/100 (45.00) feet East of the centerline of said Wilmington Pike.

Thence Eastwardly with the South line of said Patterson road, South eight nine degrees fifteen minutes zero seconds (89 deg. 15' 00") East for two hundred seventeen and 68/100 (217.68 feet to an iron pin at the Northeast corner of a 0.4513 acre tract of land leased to Shell Oil Company, said iron pin being also South eighty -- nine degrees fifteen minutes zero seconds (89 deg. 15' 00") East for one hundred eight three and 40/100 (183.40) feet from the Northwest corner of said shell Oil Company Leased and, said iron pin also being the true point of beginning of this parcel;

Thence with the South line of said Patterson road, South eighty nine degrees fifteen minutes zero seconds (89 deg. 15' 00") east for one hundred forty one and (82/100 (141.82) feet to an iron pin;

Thence with a new dividing line on the following three courses: South zero degrees forty-five minutes zero seconds (00

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

deg. 45 00") West for one hundred sixty-eight and 00/100 (168.00) feet to an iron pin, North eighty-nine degrees fifteen minutes zero seconds (89 deg. 15' 00") West for one hundred fifty-four and 00/100 (154.00) feet to an iron pin and North zero degrees forty-five minutes zero seconds (00 deg. 45' 00") East for one hundred forty-three and 101100 (143.10) feet to an iron pin

In the East line of said Shell Oil Company leased land; thence with the East line of said Shell Oil Company leased land, North twenty six degrees forty eight minutes forty nine second (26 deg. 48' 49") East for twenty seven and (72/100) (27.72) feet to the point of beginning, containing 0.5905 acres of land, more or less.

According to a survey of said premises by Luis G. Rancho, registered surveyor, State of Ohio #5287, dated September 1, 1993.

Less and except the portion of land conveyed to Paul Lam and Susan Lam, Husband and Wife, and MILA Investments, LTD., Successor Trustee to the Breitenstrater Family Trust effective as of January 1, 2005, dated August 18, 2006, recorded August 24, 2006 as instrument number 06-078525, in Montgomery County, Ohio.

Parcel ID #R72 17732 0001

This being a portion of the property conveyed to MILA Investments, Ltd., successor Trustee from Robert E. Lachey, Member, by Robert E. Lachey, Member in a deed dated April 20, 2005 and recorded April 21, 2005, as Instrument No. 2005-00036939.

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

**EXHIBIT B**

**SITE PLAN**



Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1



Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

**EXISTING AREA**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot 464-216, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot 464216, Thence, North 52 degrees 01 minute 08 seconds West 122.16 feet to a fence corner found, the place of beginning of the area herein described:

Thence, the following Four (4) courses and distances:

1. North 86 degrees 42 minutes 53 seconds West 10.00 feet to a point;
2. North 03 degrees 17 minutes 07 seconds East 30.00 feet to a point;
3. South 86 degrees 42 minutes 53 seconds East 10.00 feet to a fence corner found;
4. South 03 degrees 17 minutes 07 seconds West 33.00 feet to the place of beginning containing 330 square feet (0.007 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office,
Owner: MiIa Investments LTD.
Parcel I.D. #R72177323001

**ADDITIONAL AREA**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot 464216, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot 464216, Thence, North 52 degrees 01 minute 08 seconds West 122.16 feet to a fence corner found, Thence, North 86 degrees 42 minutes 53 seconds West 10.00 feet to a point, Thence, North 03 degrees 17 minutes 07 seconds East 33.00 feet to a point, the place of beginning of the area herein described;

Thence, the following four (4) courses and distances:

1. North 03 degrees 17 minutes 07 seconds East 15.00 feet to a point;
2. South 86 degrees 42 minutes 53 seconds East 10.00 feet to a point;
3. South 03 degrees 17 minutes 07 seconds West 15.00 feet to a fence corner found;
4. North 86 degrees 42 minutes 53 seconds West 10.00 feet to the place of beginning containing 150 square feet (0.003 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office,
Owner: MiIa Investments LTD.
Parcel I.D. #R72177323001

**TOTAL TOWER EASEMENT**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot 464216, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot 464216, Thence, North 52 degrees 01 minute 08 seconds West 122.16 feet to a fence corner found, the place of beginning of the area herein described:

Thence, the following Four (4) courses and distances:

1. North 86 degrees 42 minutes 53 seconds West 10.00 feet to a point;
2. North 03 degrees 17 minutes 07 seconds East 48.00 feet to a point;
3. South 86 degrees 42 minutes 53 seconds East 10.00 feet to a point;
4. South 03 degrees 17 minutes 07 seconds West 48.00 feet to the place of beginning containing 480 square feet (0.011 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office,
Owner: MiIa Investments LTD.
Parcel I.D. #R72177323001

**ACCESS & UTILITY EASEMENT**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot 464216, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot 464216, Thence, North 52 degrees 01 minute 08 seconds West 122.16 feet to a fence corner found, the place of beginning of the area herein described:

Thence, the following Eight (8) courses and distances:

1. North 01 degrees 17 minutes 07 seconds East 48.23 feet to a point;
2. South 86 degrees 42 minutes 53 seconds East 20.00 feet to a point;
3. South 01 degrees 17 minutes 07 seconds West 28.00 feet to a point;
4. South 86 degrees 42 minutes 53 seconds East 31.17 feet to a point;
5. North 01 degrees 14 minutes 00 seconds East 473.00 feet to a point on the southerly right of way of Patterson Road (public right of way varies);
6. South 83 degrees 15 minutes 00 seconds East with said right of way 25.00 feet to a point;
7. South 01 degrees 14 minutes 00 seconds West 498.05 feet to a point;
8. North 88 degrees 42 minutes 53 seconds West 81.21 feet to the place of beginning containing 11,856 square feet (0.273 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office,
Owner: MiIa Investments LTD.
Parcel I.D. #R72177323001

**INTERIOR SPACE**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot 464216, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot 464216, Thence, North 52 degrees 01 minute 08 seconds West 122.16 feet to a point, the place of beginning of the area herein described;

Thence, the following Six (6) courses and distances:

1. North 03 degrees 42 minutes 48 seconds West 8.00 feet to a point;
2. North 01 degrees 18 minutes 12 seconds East 5.40 feet to a point;
3. North 83 degrees 48 minutes 42 seconds East 10.00 feet to a point;
4. North 01 degrees 18 minutes 12 seconds East 23.40 feet to a point;
5. South 88 degrees 40 minutes 48 seconds East 14.00 feet to a point;
6. South 01 degrees 19 minutes 12 seconds West 36.80 feet to the place of beginning containing 406 square feet (0.009 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office,
Owner: MiIa Investments LTD.
Parcel I.D. #R72177323001

---

**BOUNDARY SURVEY**
PART LOT 464216, INSTRUCTION SQUARE (PB 53, PG 27)
CITY OF DAYTON
MONTGOMERY COUNTY
FOR: CROWN CASTLE

SITE: DAYTON SOUTHEAST
BUN: 875882
ADDRESS: 1042 PATTERSON ROAD
DAYTON, OHIO 45420
MONTGOMERY COUNTY



CC CROWN
CASTLE

**GEOLINE**
SURVEYING, INC.
15408 MAIN STREET, Suite A, #BAY-A, FL 33713
Office: (616) 719-2051 Fax: (616) 456-0548
WWW.GEOLINESURVEYING.COM

SURVEY ONCE PERFORMED BY:

**SEILER AND CRAIG SURVEYING, INC.**
270 Park Avenue West
Mansfield, OH 44902
Office: (419) 525-3644 Fax: (419) 525-3696
WWW.SEILERANDCRAIG.COM

**SURVEYOR'S NOTES**

**SURVEYOR'S CERTIFICATION**

SEILER AND CRAIG SURVEYING, INC.

CHAD F. CRAIG
LAND SURVEYOR – OHIO # 8195

Date: 02/05/2021

SHEET 3 OF 3

---

Site Name: Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

## EXHIBIT C

### EASEMENT AREA AND ACCESS EASEMENT

**TOTAL TOWER EASEMENT**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot #84016, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot #84016, Thence, North 52 degrees 01 minute 08 seconds West 120.15 feet to a fence corner found, the place of beginning of the area herein described;

Thence, the following Four (4) courses and distances;

1. North 88 degrees 42 minutes 53 seconds West 10.00 feet to a point;

2. North 01 degree 17 minutes 07 seconds East 48.00 feet to a point;

3. South 88 degrees 42 minutes 53 seconds East 10.00 feet to a point;

4. South 01 degree 17 minutes 07 seconds West 48.00 feet to the place of beginning containing 480 square feet (0.010 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office.
Owner: Mila Investments LTD.
Parcel I.D. #R72177320001

**INTERIOR SPACE**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot #84016, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot #84016, Thence, North 69 degrees 51 minutes 51 seconds West 172.88 feet to a point, the place of beginning of the area herein described;

Thence, the following Six (6) courses and distances;

1. North 88 degrees 40 minutes 48 seconds West 6.00 feet to a point;

2. North 01 degree 19 minutes 12 seconds East 5.40 feet to a point;

Site Name:  Dayton Southeast
BUN #: 875882
11821261.10
13013923.1

3.  North 88 degrees 40 minutes 48 seconds West 12.00 feet to a point;

4.  North 01 degree 19 minutes 12 seconds East 20.42 feet to a point;

5.  South 88 degrees 40 minutes 48 seconds East 18.00 feet to a point;

6.  South 01 degree 19 minutes 12 seconds West 25.82 feet to the place of beginning containing 400 square feet (0.009 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office.
Owner: Mila Investments LTD.
Parcel I.D. #R72177320001

**EXISTING AREA**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot #84016, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot #84016, Thence, North 52 degrees 01 minute 08 seconds West 120.15 feet to a fence corner found, the place of beginning of the area herein described;

Thence, the following Four (4) courses and distances;

1.  North 88 degrees 42 minutes 53 seconds West 10.00 feet to a point;

2.  North 01 degree 17 minutes 07 seconds East 33.00 feet to a point;

3.  South 88 degrees 42 minutes 53 seconds East 10.00 feet to a fence corner found;

4.  South 01 degree 17 minutes 07 seconds West 33.00 feet to the place of beginning containing 330 square feet (0.007 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office.
Owner: Mila Investments LTD.
Parcel I.D. #R72177320001

**ADDITIONAL AREA**

13013923.1

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot #84016, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot #84016, Thence, North 52 degrees 01 minute 08 seconds West 120.15 feet to a fence corner found, Thence, North 88 degrees 42 minutes 53 seconds West 10.00 feet to a point, Thence, North 01 degree 17 minutes 07 seconds East 33.00 feet to a point, the place of beginning of the area herein described;

Thence, the following Four (4) courses and distances;

1.  North 01 degree 17 minutes 07 seconds East 15.00 feet to a point;

2.  South 88 degrees 42 minutes 53 seconds East 10.00 feet to a point;

3.  South 01 degree 17 minutes 07 seconds West 15.00 feet to a fence corner found;

4.  North 88 degrees 42 minutes 53 seconds West 10.00 feet to the place of beginning containing 150 square feet (0.003 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office.
Owner: Mila Investments LTD.
Parcel I.D. #R72177320001

**ACCESS & UTILITY EASEMENT**

Situated in the City of Dayton, County of Montgomery, State of Ohio and being known as part of Lot #84016, and being more particularly described as follows:

Commencing at an iron pin found at accepted as marking the southeast corner of Lot #84016, Thence, North 52 degrees 01 minute 08 seconds West 120.15 feet to a fence corner found, the place of beginning of the area herein described;

Thence, the following Eight (8) courses and distances;

1.  North 01 degree 17 minutes 07 seconds East 48.00 feet to a point;

2.  South 88 degrees 42 minutes 53 seconds East 20.00 feet to a point;

3.  South 01 degree 17 minutes 07 seconds West 28.00 feet to a point;

13013923.1

4.  South 88 degrees 42 minutes 53 seconds East 51.17 feet to a point;

5.  North 01 degree 11 minutes 00 seconds East 475.50 feet to a point on the southerly right of way of Patterson Road (public right of way varies);

6.  South 89 degrees 15 minutes 00 seconds East with said right of way 20.00 feet to a point;

7.  South 01 degree 11 minutes 00 seconds West 495.69 feet to a point;

8.  North 88 degrees 42 minutes 53 seconds West 91.21 feet to the place of beginning containing 11,896 square feet (0.273 acre) according to survey by Chad F. Craig P.S. #8195 for Seiler and Craig Surveying, Inc. on August 12, 2019, but subject to all right of ways and easements of record.

Bearings are based on an assumed meridian and are intended to be used for angular determination only.

Created by this office.
Owner: Mila Investments LTD.
Parcel I.D. #R72177320001

13013923.1