UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| MILA INVESTMENTS, LTD., Sucessor Trustee of the Breitenstrater Trust, : : : : Plaintiff, : : v. : : GLOBAL SIGNAL ACQUISITIONS IV, LLC, : : : Defendant. | Case No. 3:23-cv-167 Judge Thomas M. Rose |

**ENTRY AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 11) AND GRANTING DEFENDANT GLOBAL SIGNAL ACQUISITIONS IV LLC'S CROSS-MOTION FOR SUMMARY JUDGMENT (DOC. NO. 15)**

Presently before the Court are Plaintiff's Motion for Summary Judgment ("MILA's Motion") (Doc. No. 11) and Defendant Global Signal Acquisitions IV LLC's Cross-Motion for Summary Judgment ("GSA's Motion") (Doc. No. 15). In the Parties' respective Motions they seek judgment on MILA Investments, LTD's ("MILA") claims of breach of contract, trespass, and ejectment. (Doc. Nos. 11, 15.)

For its part, MILA argues that GSA violated the Parties' Grant of Easement ("Grant") by building additional structures without prior notice and outside areas defined by the Grant. (*See* Doc. No. 11 at PageID 69.) MILA further argues that, based on its interpretation of the Grant, GSA is liable in the amount of $292,918.50 for the additional land GSA built upon. (Doc. No. 18 at PageID 298.) Conversely, GSA argues that it complied with the terms of the Grant, which allowed it to provide notice it was exercising its option at any time and to build on any land adjacent to the "Easement Area." (*See* Doc. No. 15 at PageID 96-97.) GSA further argues that the

1

appropriate price of the additional land it took as part of its exercise of the option is $7,566.00, based on its interpretation of the Grant.  (*Id*. at PageID 95.)

For the reasons discussed below, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED** and Defendant Global Signal Acquisitions IV LLC's Cross-Motion for Summary Judgment (Doc. No. 15) is **GRANTED**.

**I.      BACKGROUND**

By way of background, the property that forms the basis of this dispute is a shopping center built in the 1950s.  (Doc. No. 15 at PageID 86.)  Beginning in 1997, MILA's predecessor, Breitenstrater Trust, leased 1,900 square feet of the property to Sprint and Verizon to operate telecommunications equipment.  (*Id*. at PageID 86-87.)  MILA purchased the property in 2005.  (*Id*.)

In June 2019, MILA and GSA began a two-year negotiation over a proposed easement, whereby GSA would purchase the land leased to Sprint and Verizon along with an access and utility easement.  (*Id*. at PageID 88.)  On October 14, 2021, the Parties executed the Grant at issue in this case. (Doc. No. 15-5.)  The description of the easement to be granted to GSA is as follows:

> **2.      Description of Easement**. For good and valuable consideration to be paid in connection with this Easement, the receipt and sufficiency of which the parties hereby acknowledge, Grantor grants and conveys unto GSA IV, its successors and assigns, an exclusive, term easement for one hundred (100) years for the use of a portion of Grantor's Property, that portion being described as a three hundred (300) square foot parcel within Grantor's Property (the "**Easement Area**"), as such Easement Area is more particularly shown in the site plan attached hereto as **Exhibit B** and described by metes and bounds in **Exhibit C** attached hereto. The Grantor also grants to GSA IV, its successors and assigns, as part of this Easement, an exclusive, 100 year right-of-way for ingress and egress, seven (7) days per week, twenty-four (24) hours per day, on foot or motor vehicle, including trucks, along a right-of-way extending from the nearest public right-of-way, together with the right to install, replace and maintain utility wires, poles, cables, conduits and pipes (the "**Access Easement**"), as is more particularly shown in the site plan attached hereto as **Exhibit B** and described by metes and bounds in **Exhibit C** (hereinafter the term "**Easement Area**" shall be deemed to also include the Access Easement unless

2

stated to the contrary). In the event GSA IV or any public utility is unable or unwilling to use the above-described Access Easement, Grantor hereby agrees to grant an additional right-of-way, in form satisfactory to GSA IV, to GSA IV or at GSA IV's request, directly to a public utility, at no cost and in a location acceptable to GSA IV (the "**Additional Access Easement**"). For any such Additional Access Easement to be effective, such easement shall be recorded among the Public Records of Montgomery County, State of Ohio. Also, Grantor hereby grants to GSA IV, its successors and assigns a non-exclusive construction and maintenance easement over any portion of Grantor's Property that is reasonably necessary, in GSA IV's discretion, for any construction, repair, maintenance, replacement, demolition and removal related to the Permitted Use (defined below), and GSA IV shall restore such portion of Grantor's Property to its original condition after its use of the construction and maintenance easement.

(Doc. No. 15-5 at PageID 255) (emphasis in original).

The Grant further provides:

11. **Option for Additional Easement**. GSA IV shall have the irrevocable right and option (the "**Option**"), exercisable at any time, and from time to time, following the execution of the Easement, to amend the Easement for no additional consideration except as provided herein, to include up to a maximum of five hundred (500) square feet of real property adjacent to the exterior space of the Easement Area in a location as more specifically described on the Survey (the "**Additional Easement Area**"). GSA IV may conduct any reasonable due diligence activities on the Additional Easement Area at any time after full execution of the Easement. If GSA IV elects to exercise the Option, GSA IV shall pay a purchase price per square foot for the Additional Easement equal to the purchase price per square foot that GSA IV paid to Grantor for the Easement Area pursuant to the Easement. GSA IV may exercise the Option for the entire Additional Easement Area in a single exercise, or may exercise the Option multiple times in increments, by providing written notice to Grantor at any time; provided, however, that following GSA IV's delivery of notice to Grantor, GSA IV may at any time prior to full execution of the Additional Easement Area Documents (as defined herein) withdraw its election to exercise the Option if GSA IV discovers or obtains any information of any nature regarding the Additional Easement Area which GSA IV determines to be unfavorable in its sole discretion. Within thirty (30) days after GSA IV's exercise of the Option, and contemporaneously with GSA IV's payment of the Option purchase price, Grantor agrees to execute and deliver an amendment to the Easement, a memorandum of amendment (each of which may include a metes and bounds description of the Additional Easement Area), and any other documents necessary to grant and record GSA IV's interest in the Additional Easement Area ("**Additional Easement Area Documents**"). In addition, within thirty (30) days after GSA IV's exercise of the Option, Grantor shall obtain and deliver any documentation necessary to remove, subordinate or satisfy any mortgages, deeds of trust, liens or encumbrances affecting the Additional Easement Area to GSA

3

IV's satisfaction.

(*Id*. at PageID 257-58) (emphasis in original). The Grant also includes a boundary survey:



(*Id*. at PageID 269.)

GSA ultimately paid a purchase price of $644,420. (Doc. No. 15-4 at PageID 252.)

At some point in 2021, GSA began building additional communication facilities on a 150 square foot parcel east of the "Easement Area." (Doc. No. 15 at PageID 89.) In November 2022, a MILA employee doing a routine visit to the property observed construction work taking place.

4

(Doc. No 15-2 at PageID 133.) On December 1, 2022, counsel for MILA mailed GSA a letter informing them that they were in breach of the Grant and demanding $322,000 for the additional 150 square feet. (Doc. No. 15-6.) On December 28, 2022, counsel for GSA sent MILA's counsel a letter in response, seeking to resolve the matter. (Doc. No. 23-1.)

On June 15, 2023, MILA filed its Complaint for Breach of Contract, Trespass and Ejectment ("Complaint") (Doc. No. 1). MILA filed it motion for summary judgment on February 5, 2024 (Doc. No. 11). GSA filed its cross-motion on June 28, 2024 (Doc. No. 15) and MILA filed its response on August 16, 2024 (Doc. No. 18). GSA filed its reply on August 30, 2024. (Doc. No. 19.) The matter is fully briefed and ripe for review and decision.

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some

5

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

As judgment is sought on claims brought under Ohio law, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co.v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "in accordance with the then-controlling decision of the highest court of the State." *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001). To the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id*.

### III. ANALYSIS

Both Parties seek summary judgment on MILA's breach of contract, trespass, and ejectment claims. As to the breach of contract claim, the Parties' disputes revolve around three issues relating to the price of the additional easement area, notice, and the location of the additional easement area. The Parties further disagree as to whether MILA's tort claims for trespass and ejectment can exist in conjunction with its breach of contract claim.

#### A. Breach of Contract

The Parties breach of contract dispute breaks down into three issues: first, the price per square foot of the optional easement area under the Grant; second, whether GSA was required to provide notice prior to beginning construction; and, third, whether GSA was permitted to build on land east of the "Easement Area" or if it was required to build in the additional area to the north.

Under Ohio law, a breach of contract claim consists of four elements: "(1) the existence of a binding contract or agreement, (2) the non-breaching party fulfilled its contractual obligations, (3) the breaching party failed to fulfill its contractual obligations without legal excuse, and (4) the non-breaching party suffered damages as a result of the breach." *Michaela Bohemia, LLC v. FedEx Freight, Inc.*, No. 1:21-cv-463, 2023 U.S. Dist. LEXIS 10277, at *10, 2023 WL 318069, at *4 (S.D. Ohio Jan. 19, 2023) (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 144, 684 N.E.2d 1261, 1266 (Ohio Ct. App. 1996)). "A claimant seeking to recover for breach of contract must show damage as a result of the breach." *Textron*, 684 N.E.2d at 1266 (citing *Metro. Life Ins. Co. v. Triskett Illinois, Inc.*, 97 Ohio App. 3d 228, 235, 646 N.E.2d 528, 532 (Ohio Ct. App. 1994)).

The construction of a written contract is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 245-46, 374 N.E.2d 146, 150 (Ohio 1978). Common words in a contract

7

must be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly intended, based upon the face or overall contents of the document. *DN Reynoldsburg, L.L.C. v. Maurices Incorp.*, 2023-Ohio-3492, at ¶ 24, 225 N.E.3d 454, 459 (Ohio Ct. App. 2023) (citing *Alexander*, 53 Ohio St. 2d at paragraph two of syllabus).

Relevant to this dispute, Ohio contract law recognizes the doctrine of incorporation by reference. *Volovetz v. Tremco Barrier Solutions, Inc.*, 2016-Ohio-7707, at ¶ 26, 74 N.E.3d 743 (Ohio Ct. App. 2016). When a document is incorporated into another by reference, both instruments must be read and construed together. *KeyBank Nat'l Ass'n v. Columbus Campus, LLC*, 2013-Ohio-1243, ¶ 21 (Ohio Ct. App. 2013). The language used in the contract must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract. *Capital Real Estate Partners, LLC v. Nelson*, 2019-Ohio-2381, at ¶ 15 (Ohio Ct. App. 2019) (citing *Volovetz*, 2016-Ohio-7707 at ¶ 27). Whether a contract has incorporated another document by reference presents a question of law for a court to determine. *Capital Real Estate*, 2019-Ohio-2381, at ¶ 15 (citing *Volovetz*, 2016-Ohio-7707 at ¶ 27).

### i. Price Per Square Foot

The first issue raised by both Parties concerns the price per square foot GSA should pay for the additional 150 square feet of land it took pursuant to the option. The relevant language cited by both Parties states:

> If GSA IV elects to exercise the Option, GSA IV shall pay a purchase price per square foot for the Additional Easement equal to the purchase price per square foot that GSA IV paid to Grantor for the ***Easement Area*** pursuant to the Easement.

(Doc. No. 15-5 at PageID 257) (emphasis added).

MILA argues that the "Easement Area" referred to in this portion of Section 11 is "that portion being described as a three hundred (300) square foot parcel within Grantor's Property (the '**Easement Area**')" referenced in Section 2 of the Grant. (Doc. No. 18 at PageID 297.) However, MILA does concede that the map attached to the Grant as Exhibit B shows the area in question to be 330 square feet. (*Id*. at PageID 298.) Therefore, MILA argues that the price per square foot of the "Easement Area" was $1,952.79 ($644,420.70 ÷ 330). (*Id*.) Consequently, the price for the 150 square feet of land annexed by GSA would be $292,918.50 ($1,952.79 x 150). (*Id*.)

For its part, GSA argues that MILA's interpretation is only a partial reading of Section 2 and the Grant as a whole. (*See* Doc. No. 15 at PageID 90-96.) First, GSA points to Section 22 of the Grant, stating, "[MILA] hereby assigns to GSA IV all of [MILA]'s right, title and interest in the Lease Agreements, pursuant to a separate Assignment of Lease Agreement ("Assignment") of even date herewith." (Doc. No. 15-5 at PageID 259-60.) GSA then points to an Assignment of Assumption of Lease Agreement—executed the same day as the Grant—whereby GSA and MILA agreed that GSA would be granted an easement over the premises previously leased by Sprint and Verizon. (Doc. No. 15-3.) Specifically, GSA points to the following language:

> **WHEREAS**, pursuant to that certain Grant of Easement between the Parties, dated of even date herewith ("**Easement**"), Assignor granted to Assignee an exclusive, one hundred (100) year term easement for the use of a portion of Assignor's property known as the Easement Area (as defined in the Easement), which contains the same lands as Leased Premises 1 and Leased Premises 2 (collectively the "**Leased Premises**") and the Access Easement (as defined in the Easement)….

(Doc. No. 15-3 at PageID 181.)

A lease attached to the Assignment—corresponding with Leased Premises 2—demonstrates that one of the properties is an area of approximately 400 square feet inside of the existing building. (Doc. No. 15-3 at PageID 240.) A point MILA conceded in its deposition. (Doc. No. 15-2 at PageID 129.) Moreover, there is an additional 1,200 square feet of interior space

9

that was part of the Lease Premises 1, but not included on the survey. (Doc. Nos. 15 at PageID 93; 15-2 at PageID 129.) However, GSA does not contend that the 1,200 square feet of interior space should be included in the price calculation. (Doc. No. 15 at PageID 95 n. 4.) Thus, GSA argues that only the 400 square foot area of Leased Premises 2 should be included in the price calculation. (Doc. No. 15 at PageID 94.)

GSA next argues that the terms of Section 2 are more expansive than the 330 square foot area MILA argues for. (Doc. No. 15 at PageID 94.) Specifically, it argues the Court cannot stop reading Section 2 at the language stating, "that portion being described as a three hundred (300) square foot parcel within Grantor's Property (the '**Easement Area**')…." (Doc. No. 15-5 at PageID 255) (emphasis in original). Instead, GSA points to the very next sentence to show how expansively the term "Easement Area" should be interpreted:

> [MILA] also grants to GSA IV, its successors and assigns, as part of this Easement, an exclusive, 100 year right-of-way for ingress and egress, seven (7) days per week, twenty-four (24) hours per day, on foot or motor vehicle, including trucks, along a right-of-way extending from the nearest public right-of-way, together with the right to install, replace and maintain utility wires, poles, cables, conduits and pipes (the "**Access Easement**"), as is more particularly shown in the site plan attached hereto as **Exhibit B** and described by metes and bounds in **Exhibit C** (hereinafter the term "**Easement Area**" shall be deemed to also include the Access Easement unless stated to the contrary)….

(Doc. Nos. 15 at PageID 94; 15-5 at PageID 255.) In view of this language, GSA contends that the "Easement Area" is not only the 330 square foot portion described above, but also the 11,896 Access & Utility Easement shown on the survey. (Doc. No. 15 at PageID 94.) GSA also argues that a 150 square foot area designated "Additional Area" on the survey was also part of the Grant. (*Id*.)

Therefore, GSA argues that the "Easement Area" is actually 12,776 square feet (11,896 + 300 + 400 + 150). (*Id*. at PageID 94-95.) The price per square foot would then be $50.44

10

($644,420 ÷ 12,776), for a total price of the annexed 150 square feet coming to $7,566 ($50.44 x 150). (*Id*. at PageID 95.)

The Court is persuaded that a complete reading of the Grant is consistent with a broader understanding of what is contained within the term "Easement Area." As an initial matter, the Parties do not dispute that the 330 square foot area identified in Section 2 is part of the "Easement Area." The Court further finds that the Access & Utility Easement identified on the survey is the Access Easement identified in Section 2 of the Grant. Moreover, under the unambiguous terms of the Grant, "the term '**Easement Area**' shall be deemed to also include the Access Easement unless stated to the contrary…." (Doc. No. 15-5 at PageID 255.) Section 11 of the Grant does not state the Easement Area—as used in that section—does not include the Access Easement. The Court sees no compelling reason to disturb the language of Section 2 when interpreting Section 11. Consequently, the Easement Area also includes the 11,896 square feet of the "Access & Utility Easement" or "Access Easement."

The Court further finds that the 400 square foot area of Leased Premises 2 is also part of the "Easement Area." Section 22 states, "[MILA] hereby assigns to GSA IV all of Grantor's right, title and interest in the Lease Agreements, pursuant to a separate Assignment of Lease Agreement of even date herewith." (Doc. No. 15-5 at PageID 260.) The Assignment, in turn, states, "[MILA] granted to [GSA] an exclusive, one hundred (100) year term easement for the use of a portion of [MILA]'s property known as the Easement Area… which contains the same lands as Leased Premises 1 and Leased Premises 2." (Doc. No. 15-3 at PageID 181.)

As discussed above, Ohio follows the doctrine of incorporation by reference, whereby both documents must be read together. *KeyBank*, 2013-Ohio-1243 at ¶ 21. The Assignment is directly referenced in Section 22, thus the Court reads the two documents in conjunction. Therefore, the

11

Court finds that the 400 square foot area of Leased Premise 2 is also part of the "Easement Area" referenced in Section 11.

However, the Court does not find the 150 square foot "Additional Area" referenced on the survey to be part of the "Easement Area." GSA fails to point to any language in the Grant or the Assignment that purports to make the "Additional Area" part of the "Easement Area." Indeed, as far as the Court can discern, the only reference to the "Additional Area" is on the survey.

Therefore, the Court finds that the "Easement Area" is 12,626 square feet (11,896 + 330 + 400). Consequently, the price per square foot would be $51.04 ($644,420.70 ÷ 12,626), for a total price of the annexed 150 square feet equaling $7,656 ($51.04 x 150).

### ii. Notice

The Court next turns to the issue of notice. MILA contends that GSA was required to provide notice *before* it exercised its option under the Grant, but GSA failed to do so. (Doc. No. 22 at PageID 328.) It is MILA's contention that notice is always required prior to action and GSA's failure to provide notice prior to constructing its communication facilities is a breach of the notice requirement of the Grant. (*Id*. at PageID 327-28.) GSA, on the other hand, argues that the Grant expressly permits it to provide notice "at any time." (Doc. No. 15 at PageID 96.)

The Grant provides, "GSA IV may exercise the Option for the entire Additional Easement Area in a single exercise, or may exercise the Option multiple times in increments, by providing written notice to Grantor at any time…." (Doc. No. 15-5 at PageID 257.) The Grant further provides in Section 28 that notices, "shall be given by (a) established express delivery service which maintains delivery records, (b) hand delivery, or (c) certified or registered mail, postage prepaid, return mail requested." (*Id*. at PageID 260.)

MILA points the Court to two cases for the proposition that notice needed to come prior to the exercise of the option to give MILA time to respond. (Doc. No. 22 at PageID 327.) The Court is unpersuaded by this authority, however. Both cases cited by MILA involve insurance agreements where the notice provision required one of the parties to provide notice quickly. *See Ruby v. Midwestern Indem. Co.*, 40 Ohio St. 3d 159, 161, 532 N.E.2 730, 732 (Ohio 1988) (policy required the plaintiff to act "promptly"); *Ormet Primary Aluminum Corp. v. Emplrs. Ins. Of Wausau*, 88 Ohio St. 3d 292, 300, 725 N.E.2d 646, 653 (Ohio 2000) (contract required plaintiff to provide notice "as soon as practicable" after an accident or immediately after a suit is brought against the insured).

The issue MILA faces is that they agreed to a fundamentally different term. MILA agreed to, "written notice to Grantor at any time…." (Doc. No. 15-5 at PageID 257.) Thus, the facts of this matter are fundamentally different to those in MILA's cited cases. The insurance agreements in *Ruby* and *Ormet* both required a level of expediency not reflected in the Grant. Ultimately, MILA agreed to notice "at any time," which unambiguously means GSA had the right to notify MILA after it began construction. The fact that term lead to the head scratching situation where GSA was well into constructing its facilities before MILA became aware is simply the product of MILA agreeing to a term that allowed for that situation to occur.

Indeed, MILA's contention that "[n]otice provisions allow the insurer to become aware of occurrences early enough that it can have a meaningful opportunity to investigate," is equally unavailing. (Doc. No. 22 at PageID 327 (citing *Ormet*, 88 Ohio St. 3d at 300).) Looking past the fact that this is not an insurance dispute, the basic tenant proposed by MILA is undermined by the terms of the Grant. In the insurance context, notice is important to the insurance company so it may determine whether it has to pay out on the insurance agreement or prepare to defend the

13

insured if they are sued by the victim of an accident. In short, the insurer has rights and obligations specific to the occurrence of a covered event.

In this instance, MILA had essentially no right to undertake any action with regard to GSA's exercise of the option in Section 11. GSA was entitled to pick a piece of land adjacent to the easement area and build upon it without a requirement that it consult with MILA first. MILA was not given a right of refusal, there was no requirement that payment be made before shovels hit dirt, and MILA had no right to investigate or modify GSA's rights and obligations. Essentially, once GSA decided to build, MILA had no part in the affair beyond receiving payment and executing the necessary documents to record the transfer. Thus, the Court will not read Section 11 to require prior notice.

The Court further finds that the December 28, 2022 letter[1] from GSA's counsel to MILA's counsel satisfies the notice requirement of the Grant. The letter makes clear that GSA has taken the property pursuant to the option, that it was entitled to provide notice at "'any time,'" and offers compensation per the Grant. (Doc. No. 23-1 at PageID 345-46.) The Grant does not require the notice to include any particular language, thus exercising the option in this way was permissible.

Moreover, the manner of providing the notice was similarly permissible under Ohio law. Ohio law, "does not require futile or vain acts." *Love v. Beck Energy Corp.*, 2015-Ohio-1283, ¶

---

[1] The Parties dispute whether the December 28, 2022 letter from GSA's counsel should be admissible in its entirety. GSA seeks to have the version MILA included with its brief stricken under Fed. R. Evid. 408 because it is a protected settlement communication. (Doc. No. 23 at PageID 338 n. 4.) MILA responds that such communications are admissible to demonstrate notice. (Doc. No. 24 at PageID 349-50.) Fed. R. Evid. 408 makes inadmissible, "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction" promises of valuable consideration made in compromising or attempting to compromise a claim or made during compromise negotiations about a claim. Fed. R. Evid. 408(a)(1)-(2). The majority of the December 28, 2022 letter is an effort to compromise any claims in regard to GSA's exercise of the option. MILA's case law regarding notice misses the point entirely. Notice in the cases cited by MILA involved demonstrating that one of the parties was aware that its prior conduct was wrongful or that they were subject to certain claims. In this instance, the notice sought by the Court was pursuant to the legal requirement under the Grant that GSA provide notice of its exercise of the option, not a question of whether either party was aware of some particular prior conduct. The Court finds that MILA's version of the December 28, 2022 letter violates Fed. R. Evid. 408.

40 (Ohio Ct. App. 2015) (*State ex rel. Teamsters Local Union 436 v. Cuyahoga Cty. Bd. of Commrs.*, 132 Ohio St. 3d 47, 53-4, 2012–Ohio–1861, at ¶ 24, 969 N.E.2d 224 (Ohio 2012)); *see also George Wiedemann Brewing Co. v. Maxwell*, 78 Ohio St. 54, 66 (Ohio 1908) ("the law does not require the doing of vain things").

While MILA does not raise this issue, the Grant did require GSA to provide the notice by "(a) established express delivery service which maintains delivery records, (b) hand delivery, or (c) certified or registered mail, postage prepaid, return mail requested." (Doc. No. 15-5 at PageID 260.) However, MILA preemptively contacted GSA regarding the exercise of the option, thus sending the December 28 letter by one of the means prescribed by the Grant would have been a futile act.

Consequently, the Court finds GSA did not breach the Grant by providing notice that it was exercising the option after construction began. The Court further finds the December 28, 2022 letter was an appropriate means of providing notice.

### iii. Permissible Construction Area

MILA finally argues that GSA breached the Grant by failing to place their communication equipment on a piece of land appropriately identified in said Grant. (Doc. No. 18 at PageID 297.) In MILA's view, the only space GSA was permitted to expand—pursuant to the Grant—was to the north of the "Easement Area" in the space labeled "Additional Area" on the survey. (Doc. No. 18 at PageID 297.)

GSA counters that this interpretation is at odds with the plain terms of the Grant. (Doc. No. 15 at PageID 96.) In its reading of the Grant, GSA contends that the area in which it was able to exercise its option simply needed to be "***adjacent*** to the exterior space of the Easement Area in a location more specifically described on the Survey." (*Id*. (citing Doc. No. 15-5 at PageID 257))

15

(emphasis in brief). Moreover, GSA argues that MILA's position is undermined by another portion of the Grant because Section 11 allows GSA to exercise its option on up to 500 square feet of additional property. (Doc. No. 19 at PageID 308.)

Section 11 of the Grant provides, in part:

> GSA IV shall have the irrevocable right and option (the '**Option**'), exercisable at any time, and from time to time, following the execution of the Easement, to amend the Easement for no additional consideration except as provided herein, a maximum of five hundred (500) square feet of real property adjacent to the exterior space of the Easement Area in a location as more specifically described on the Survey (the '**Additional Easement Area**').

(Doc. No. 15-5 at PageID 257) (emphasis in original).

The language of the Grant and the terms and values defined on the Survey are at odds. The Survey fails to define any area as the "Additional Easement Area" and instead defines an "Additional Area." It might have been reasonable to assume the "Additional Area" is the same as the "Additional Easement Area," however, the Grant provides for up to 500 additional square feet of space as part of the option and the "Additional Area" is only 150 square feet. Needless to say it is not possible to have 500 square feet of additional space in a 150 square foot area.

The Court therefore finds that GSA was entitled to build on any exterior space adjacent to the "Easement Area" and it was not confined to building on the "Additional Area" described on the Survey. The "Additional Area" was one location it was entitled to build upon, but the Survey fails to identify an "Additional Easement Area" of 500 square feet in keeping with the language of the Grant.

Consequently, GSA did not breach the Grant by building in an area adjacent to the exterior of the "Easement Area," but outside of the "Additional Area" described on the Survey.

### B. Viability of Tort Claims

The Parties finally disagree on the viability of MILA's tort claims for trespass and

ejectment. For its part, MILA argues that this is a clear-cut case of trespass. (Doc. No. 11 at PageID 70.) GSA, in MILA's view, built its communications facilities on property owned by MILA without proper notice and without compensating MILA. (*Id*.) Similarly, since GSA is in wrongful possession of property that truly belongs to MILA, it is entitled to an order removing GSA from its property. (*Id*. at PageID 72.)

GSA counters that MILA's trespass and ejectment claims are barred by Ohio law, which prevents a plaintiff from alleging tort claims arising solely from contractual obligations. (Doc. No. 15 at PageID 97.) GSA argues that MILA's trespass and ejectment claims simply restate its contractual claims. (*Id*.)

Under Ohio law, a breach of contract claim generally excludes a tort claim based on the same conduct. *Textron Fin. Corp.*, 115 Ohio St. 3d at 151 (citing *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). Generally, a tort claim based on the same conduct as a breach of contract claim will exist, "only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron Fin. Corp.*, 115 Ohio St. 3d at 151 (citing *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 117 (6th Cir. 1976)).

MILA concedes, "if GSA had given MILA fair notice of its intention to exercise the Option, no trespass would have occurred." (Doc. No. 18 at PageID 300.) Indeed, both the trespass and ejectment claims cannot survive in this matter, as the Court has found GSA has not breached the Grant. GSA built its communications equipment on property in accordance with the Grant and provided appropriate notice. Moreover, GSA offered payment in compliance with its understanding of the Grant, which MILA rejected based upon its understanding of the Grant. As GSA has not improperly intruded on MILA's property and is not in wrongful possession of

MILA's property, neither the trespass nor the ejectment claim can survive.

## IV. <u>CONCLUSION</u>

For the reasons discussed below, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED** and Defendant Global Signal Acquisitions IV, LLC's Cross-Motion for Summary Judgment (Doc. No. 15) is **GRANTED**.

GSA is further **ORDERED** to pay $7,656 to MILA pursuant to Section 11 of the Grant of Easement.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, October 23, 2024.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE